UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ELIGIO ALCALA, | ) |
| Plaintiff, | ) Case No. EDCV 12-1998 AJW |
| v. | ) MEMORANDUM OF DECISION |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 1-2]. In an August 3, 2011 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. [JS 2; Administrative Record ("AR")11-17].

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ failed properly to consider the medical evidence of record, including a July 15, 2010 letter from plaintiff's treating hematologist and oncologist, Steven Kim, M.D. [JS 4-11].

The ALJ found that plaintiff had a single severe impairment consisting of paroxysmal nocturnal hemoglobinura ("PNH")[1].

During the June 2011 hearing, plaintiff, then aged 25, testified that he began receiving treatment for

---

[1] PNH is a rare, chronic, life-threatening blood disorder characterized by destruction of red blood cells (hemolytic anemia). Red blood cells break down earlier than normal and leak hemoglobin into the blood, which can then pass into the urine. Red and white blood cell counts and platelet counts may be low. Symptoms can include abdominal pain and headaches, both of which may be severe; back pain; excessive weakness; excessive fatigue; blood clots; dark urine; easy bruising or bleeding; and shortness of breath. See Paroxysmal Nocturnal Hemoglobinuria, Medline Plus website, United States National Library of Medicine and National Institutes of Health, available at http://www.nlm.nih.gov/medlineplus/ency/article/000534.htm (last accessed Jan. 15, 2014); Paroxysmal Nocturnal Hemoglobinuria, Johns Hopkins Medicine website, available at http://www.hopkinsmedicine.org/kimmel_cancer_center/types_cancer/paroxysmal_nocturnal_hemoglobinuria_PNH.html (last accessed Jan. 15, 2014).

1  PNH when he was 19. [AR 24, 33]. Plaintiff said that he had been treated for PNH, and subsequently for
2  kidney and liver problems, by Dr. Kim and Dr. Horn at Arrowhead Regional Medical Center. [AR 25-32].
3  Plaintiff said that his treatment initially involved receiving bi-monthly blood transfusions, but since 2007
4  he had been receiving transfusions of a medication (Soliris) in place of blood transfusions. Plaintiff said
5  that he had to receive a Soliris transfusion every 15 days, and he "might" have a window to undergo the
6  transfusion a day earlier or a day later, but no more. [AR 27]. Plaintiff testified that his transfusion
7  appointments started at 9 a.m., that he received the transfusion through a port, and that he normally was
8  discharged at 3 or 4 p.m. [AR 26-27]. Plaintiff said that although the transfusions helped improve his blood
9  hemogloblin level, it was not stable even with the transfusions. [AR 28]. Plaintiff testified that he was
10 anemic, that he urinated blood every day, and that he had polycystic kidney disease and cysts on his liver.
11 [AR 28, 32-33].

12 The record contains approximately 550 pages of treatment records for the period from October 2006
13 through March 2011; however, the only treatment report that the ALJ summarized or discussed in her
14 decision was Dr. Kim's July 2010 letter. [See AR 134-238, 243-699]. In that letter, Dr. Kim wrote that
15 plaintiff has PNH, which he described as "a rare and life-threatening illness" that can cause serious
16 complications, including thromboses (blood clots), renal failure, and lung problems. [AR 683]. Dr. Kim
17 said that "[o]ne of the most common manifestations of PNH is extreme fatigue that is out of proportion to
18 the degree of anemia," and that

19 > in the past, plaintiff had received 3 units per month of blood due to the severe anemia he
20 > usually presents with. The Soliris that is currently being administered is only partially
21 > controlling his symptoms. In addition, he is now developing kidney cysts that are becoming
22 > more painful and [he] is currently closely followed by urology in this regard. Given the
23 > multitude of physical problems, it is doubtful that [plaintiff] can sustain long term
24 > employment. In addition, he will need to see the bone marrow transplant center at City of
25 > Hope to more definitively treat his disease. Please strongly consider him for long term
26 > disability and Med enrollment.

27 [AR 683].

28 A treating physician's opinion is not binding on the Commissioner with respect to the existence of

an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion is entitled to controlling weight. Orn v. Astrue, 495 F.3d 625, 631-632 (9th Cir. 2007); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(c), 416.927(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.

Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; (6) the area of specialization; and (7) "other factors," such as the degree of understanding the physician has of the social security "disability programs and their evidentiary requirements," and the physician's familiarity with other information in the case record. See Orn, 495 F.3d at 631; Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527).

An ALJ is required to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Orn, 495 F.3d at 632; Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Dr. Kim's opinion was controverted by the opinion of the non-examining state agency physician, Dr. Lizarraras, who found that plaintiff did not have a severe impairment. [AR 15, 239-242]. Therefore, the ALJ was required to articulate specific, legitimate reasons supported by substantial evidence for rejecting Dr. Kim's opinion. However, Dr. Lizarraras's opinion does not itself constitute substantial evidence justifying rejection of Dr. Kim's opinion because the ALJ concluded that Dr. Lizarraras's opinion was contrary to the record as a whole. [AR 15].

The ALJ said that she rejected Dr. Kim's opinion because: (1) Dr. Kim "did not identify what

4

specific work restrictions [plaintiff] has due to his conditions and instead gave a blanket statement"; (2) Dr. Kim did "not appear to [be] qualified to identify the work available in the regional/national economy [that plaintiff] is able to perform with his limitations"; and (3) "[plaintiff's] records, including those from Dr. Kim, do not support a finding that [plaintiff] is incapable of performing any work activity." [AR 15].

The ALJ's first reason for rejecting Dr. Kim's opinion is not legitimate. Although Dr. Kim did not assess specific work restrictions in social security disability terms, his opinion was more than a mere "blanket statement" of disability. [AR 683]. Dr. Kim indicated that plaintiff's ability to "sustain long term employment" was limited by the risk of serious complications from PNH, severe anemia, plaintiff's need to undergo transfusion therapy, the likelihood he would experience excessive fatigue, and painful kidney cysts. As plaintiff's long-time treating physician and a specialist in the relevant field of hematology[2], Dr. Kim was well-qualified to render an opinion about the nature and severity of plaintiff's impairments. See Edlund, 253 F.3d at 1157 & n.6; Holohan, 246 F.3d at 1202. There was no other treating source opinion. The ALJ did not obtain a consultative examination (which would have included a work-related functional assessment), and she rejected the nonexamining source opinion. If the ALJ wanted clarification from Dr. Kim, she should have recontacted him. Mischaracterizing his opinion as a "blanket statement" does not constitute a legitimate reason for rejecting it.

The ALJ's second reason for rejecting Dr. Kim's opinion is insufficient. The ALJ correctly observed that Dr. Kim was not qualified to identify alternative work in the economy that a person with plaintiff's RFC could perform; however, it is not treating physician's function to identify alternative jobs available in significant numbers. To make that determination, the ALJ must rely on a vocational data or the Medical-Vocational Guidelines. See Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001). While the ALJ was not bound by Dr. Kim's opinion on the legal issue of whether plaintiff was disabled within the meaning of the Social Security Act, she nonetheless was obliged to consider Dr. Kim's opinion about the nature and severity of plaintiff's impairments, including his "subjective judgments" about plaintiff's ability to work. Lester v. Chater, 81 F.3d

---

[2] Defendant's contention that Dr. Kim's opinion is entitled to less weight because he was not a kidney specialist lacks merit. PNH and anemia are blood disorders, so hematology is a relevant specialty, though not necessarily the only one.

821, 832-833 (9th Cir. 1995); see Edlund, 253 F.3d at 1157 & n.6; Holohan, 246 F.3d at 1202.

The final reason given by the ALJ for rejecting Dr. Kim's opinion is that plaintiff's "records, including those from Dr. Kim, do not support a finding that [plaintiff] is incapable of performing any work activity." [AR 15]. The ALJ did not identify any of the evidence she relied upon support that conclusion, and since she did not summarize the treatment records in her decision, no reasonable inferences can be drawn about which "records" she is alluding to. See Orn, 495 F.3d at 632 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (internal quotation marks and citations omitted); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (holding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Defendant attempts to cure the defects in the ALJ's decision by citing evidence she believes supports the ALJ's rejection of Dr. Kim's opinion, but it is well-established that this court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); see Stout, 454 F.3d at 1054 (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

For these reasons, the ALJ erred in evaluating Dr. Kim's treating source opinion.

**Credibility finding**

Plaintiff contends that the ALJ erred in assessing the credibility of plaintiff's subjective complaints. [JS 12-17].

As noted above, plaintiff testified that his treatment for PNH required undergoing a Soliris transfusion every 15 days, give or take one day, and that his transfusion appointment lasted from 9 a.m. until

about 3 p.m. [AR 25-27]. Plaintiff also testified that he was prescribed Norco for kidney pain. [AR 25]. Plaintiff said that he was anemic, and that as a result he suffered "fatigue" and "tiredness," especially in his legs, and shortness of breath. [AR 28, 31]. Plaintiff said that he had pain in his kidneys, which he felt on both sides in his lower back. [AR 28-29, 33]. He said that his urine was always dark in the morning, a sign that he was losing blood in his urine. [AR 33]. Plaintiff explained that he did not want to risk undergoing surgery on his kidneys because he had been told there was a risk he would end up on dialysis. [AR 29]. Asked if he could do an easy job, such as one that did not require heavy lifting and allowed him to sit or stand at will, plaintiff said that kidney pain and tiredness would prevent him from doing such a job for even a full work day. [AR 29-30]. Plaintiff said that he had to lay down and rest three or four times a day due to tiredness and shortness of breath. [AR 31]. He testified that his daily activities included eating, using the restroom, and napping. [AR 30-31]. Plaintiff also testified that he had been feeling depressed and had been prescribed Zoloft, but that it made his heart "too fast," prompting him to go the emergency room. [AR 34]. Consequently, he stopped taking Zoloft and declined other antidepressant medication. [AR 34].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the claimant's subjective testimony without providing "clear and convincing reasons"). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain

1 medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other
2 measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the
3 claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3);
4 see also SSR 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation
5 of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation,"
6 considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the
7 claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor
8 by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work
9 record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect
10 of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v.
11 Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

12 Because there was no evidence of malingering, the ALJ was required to articulate specific, clear,
13 and convincing reasons to support her negative credibility finding.

14 The ALJ summarized plaintiff's subjective testimony. [AR 14-15]. She found that plaintiff's
15 "records do not support the degree of limitation alleged," and that his testimony and written statements "are
16 only credible to the extent that he is able to perform" light work with occasional postural activities. [AR
17 15]. To support her credibility finding, the ALJ parenthetically cited several exhibits comprising hundreds
18 of pages of treatment records, but she did not specifically identify any objective findings or other evidence
19 reflected in those records that undermines the alleged severity of plaintiff's subjective complaints. This was
20 patently inadequate. See Moisa, 367 F.3d at 885 (stating that the ALJ's credibility findings "must be
21 sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on
22 permissible grounds and did not arbitrarily discredit the claimant's testimony"). The ALJ also noted that
23 plaintiff was "observed to have no difficulties" when he was interviewed by a Social Security field office
24 employee in connection with his benefits application in November 2009. [AR 15, 107-110]. Plaintiff's
25 ability to sit through a brief interview is not a legally sufficient reason for rejecting his subjective testimony
26 about why he cannot work. The ALJ also failed to acknowledged the extent to which Dr. Kim's letter
27 corroborated plaintiff's subjective complaints. Accordingly, the ALJ erred in rejecting the alleged severity
28

of plaintiff's subjective complaints.[3]

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Connett, 340 F.3d at 876 (explaining that the court has some flexibility in applying the "crediting as true doctrine," and remanding for further administrative proceedings where the ALJ made insufficient findings as to whether the claimant's testimony should be credited as true).

The ALJ did not properly weigh Dr. Kim's opinion, but that opinion does not provide a complete picture of plaintiff's specific work-related functional limitations, nor does it establish a date of onset of disability. Furthermore, defendants' argument indicates that the record contains evidence that at least arguably could support a less than fully favorable credibility finding. In these circumstances, crediting the improperly discredited evidence is not mandatory, and it is appropriate to remand this case to the

---

[3] Defendant again misguidedly attempts to fill in the blanks in the ALJ's decision. See Bray, 554 F.3d at 1225.

Commissioner for further administrative proceedings. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (holding that the "crediting as true" rule was not mandatory where the improperly rejected treating source opinion failed to identify an onset date); Connett, 340 F.3d at 876 (remanding for further administrative proceedings where the ALJ made insufficient findings as to whether the claimant's testimony should be credited as true); see also Fantetti v. Comm'r of Soc. Sec., 2009 WL 2827947, at *10 (S.D. Ohio Aug. 31, 2009) (remanding for further administrative proceedings where the record was "simply not clear" as to what the claimant, who had severe PNH and anemia, was able to do during the day and when and how long she must rest, and noting that "[t]his case is about stamina and endurance").

On remand, the Commissioner shall take appropriate steps to develop the record and shall issue a new decision that contains appropriate findings at each step of the sequential evaluation.

## Conclusion

For the reasons described above, the Commissioner's decision is **reversed,** and this matter is **remanded to the Commissioner for further administrative proceedings consistent with this memorandum of decision**.

**IT IS SO ORDERED.**

January 21, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge